

1201 Pacific Avenue, Suite 600 • Tacoma, WA 98402 • Seattle (206) 248-3090 • Tacoma (253) 203-3298 • FAX (253) 203-3101

August 21, 2015

Guy Bogdanovich
Law, Lyman, Daniel, Kamerrer & Bogdanovich
P.O. Box 11880
Olympia, WA 98508

Re:   Jenny Borelis
DOB: 10/13/84  (28 – deceased)
DOI:  05/16/13

Dear Mr. Bogdanovich:

I am a vocational rehabilitation counselor and I have been practicing professionally and employed continuously and solely in the field of vocational rehabilitation since January of 1996. A copy of my resume has been previously provided.

My professional billing rate is $215 per hour with testimony time charged at $275 per hour.

At your request Ms. Borelis' employment situation has been evaluated. To complete the evaluation, records received have been reviewed and include the following:  Miscellaneous Records:  Washington Courts Case Records, Washington State Department of Social and Health Services, Washington State Patrol Criminal History Information, Social Security Administration; Miscellaneous Medical Records:  Family Planning of Clallam County, PeaceHealth Southwest Medical Center, Department of Corrections Behavioral Health; Defendants' First Set of Interrogatories and Requests for Production to Plaintiff Lisa Sully and Answers & Responses Thereto 02/25/15; Deposition of Laura Elliott 07/01/15.

The report that follows provides an assessment of Ms. Borelis' educational and employment capacity and earning capacity. The employment capacity and earning capacity assessment contained in this report is based on my education and experience in the field of rehabilitation counseling, on my experience evaluating earning capacity and on the research required to contribute to two books that have been published. I am a contributing author of *A Rehabilitation Counselor's Practical and Historical Guide to Earning Capacity Assessment*, published by Elliott and Fitzpatrick in 2007. The peer review of this book can be accessed on the Owings Lewis website (www.owingslewis.com). The second book, *A Lawyer's Guide to Understanding Earning Capacity Assessment and Earning Capacity Options* was written at the request of the American Bar Association and was published in 2009.

The employment and earning capacity analyses that follow are based on accepted rehabilitation counseling practices and methodologies and on available records and sources of information commonly relied upon by rehabilitation counselors to perform these analyses.

Discussion of Ms. Borelis' employment situation follows. The analysis is based on available data. New information will be factored into the following analysis as it is received.

## MEDICAL ASPECTS

There is limited information available regarding Ms. Borelis' medical history. What is known is that between approximately 1998 and 2013 Ms. Borelis had been assessed multiple times for substance abuse and participated in both inpatient and outpatient for these issues during that timeframe. Additionally, Ms. Borelis is noted to have given birth to what appears to be twins in 2006 and a singleton in 2010. In 2006 she was diagnosed with astigmatism and fitted with corrective lenses, was involved in smoking cessation treatment, was diagnosed with drug dependence through 2010 and was diagnosed with chronic hepatitis C which continued to be diagnosed through 2011. Ms. Borelis was diagnosed with lumbago in 2008 and diagnosed with a lower leg injury in 2011. It is further noted that Ms. Borelis may have participated in counseling or related treatment with regard to depression. In 2012 Ms. Borelis was discharged from the Department of Corrections Behavioral Health with a multiaxial diagnosis including: Axis I – anxiety disorder, nos, depressive disorder, nos, PTSD, polysubstance dependence; Axis II – antisocial personality disorder; Axis IV – incarcerated, uneducated, unemployed, homeless, lack of general assistance; Axis V – current global assessment of functioning 50. The discharge summary also indicated that Ms. Borelis had a history of four childbirths (all of whom have been adopted), hepatitis C, lack of sensation in both of her hands and bad vision. Available records indicated that at the time of her death, Ms. Borelis had been diagnosed with congestive heart failure.

## SOCIAL HISTORY

At the time of her death, Ms. Borelis was a 28 year old woman with a last known address in Kelso, WA.

Ms. Borelis appears to have a criminal history dating back to approximately 2003 including three felonies (second degree theft in 2003, second degree possession of stolen property in 2003 and third degree assault in 2007); three gross misdemeanors (third degree theft in 20011 and 2012; and five misdemeanors (third degree driving with license suspended or revoked in 2007, 2009 and 2010). Additionally, records indicate a fourth degree assault in 2012 and a third degree assault and resisting arrest in May 2013. It is noted that an order of protection was filed in March 2002 and terminated in September 2002, but is it not clear if this order was placed for or against Ms. Borelis and/or for what reason. According to available records, Ms. Borelis has been incarcerated at least 23 times for unknown durations dating back to approximately 2003.

Ms. Borelis also appears to have had a drug abuse history dating back to approximately 1998 and continuing through 2013. The records indicate multiple drug/alcohol assessments and several instances of both inpatient and outpatient treatment. Available information notes Ms. Borealis reported drinking alcohol, smoking cigarettes and smoking marijuana at the age of 12 years old. She reported using cocaine and methamphetamine at age 16 and heroin at age 17.

## **FAMILY HISTORY**

There is currently limited information related to the educational and/or work histories of any of Ms. Borelis' family members. The education and work histories of parents or other family members can be important information when determining the employment and earning capacities of a younger individual. If additional information becomes available it will be factored into this analysis.

Ms. Borelis' mother is noted to have a mental disability with a reported IQ of about 68 with the mental equivalency of about a five year old. Her mother does not recall attending school and appears to have been a resident of an institution in her early life.

## **EDUCATION AND WORK HISTORY**

At this time there is limited information regarding Ms. Borelis' education and work history. According to available records, Ms. Borelis was noted in one place to have quit school in the 9th grade and in another to have completed the 10th grade with no reported further formal education.

While it is indicated in the records that Ms. Borelis' full employment history is unknown, it is noted that she worked off and on as a temporary worker in a fish cannery. She reported working for the cannery for six years and/or 12 seasons. There is currently no information regarding the amount of earnings Ms. Borelis may have obtained over her work history. It is additionally noted in the records that it is unknown whether Ms. Borelis ever filed any income tax returns.

Employment and earnings information can be utilized to determine how much an individual has worked and assessing the work pattern of that individual. If additional information becomes available it will be factored into this analysis.

## **ASSESSMENT**

Ms. Borelis was 28 years old at the time of her death in May 2013. It appears that she has an approximately 10th grade education or less. Her work history is unknown but it has been reported that she may have worked off and on as a temporary cannery worker for several seasons. She has a reported substance abuse history as well as a multiple felony criminal history for which she has been incarcerated on a number of occasions for unknown periods of time between 2003 and 2013.

According to vocational development theory, Ms. Borelis was in the exploration phase of her vocational development. Workers in the exploration phase of their vocational development, because of their young age, have yet to choose the area of employment they will pursue over the majority of their work life. Young workers in the exploration stage of their vocational development typically move from job to job prior to becoming established in the occupation they will hold over their work life. It is generally accepted, per vocational development theory, that sometime between the ages of 25 and 35 workers choose an area of employment in which they will continue to work over the long term, learn job skills, and become experienced workers in their chosen area of work. At the age of 28, Ms. Borelis should have been in the middle to late stages of the exploration phase and beginning to settle into a chosen area of employment.

According to the records, Ms. Borelis worked off and on as a temporary cannery worker for several seasons. Although solely based on her age Ms. Borelis was in the exploration stage of vocational development, she did not appear to be participating in vocational exploration through regular employment. Additionally, Ms. Borelis appears to have spent unknown periods of time incarcerated between 2003 and 2013 as well as had ongoing difficulties with substance abuse. These behaviors are not conducive to gaining and maintaining regular employment.

Considering that Ms. Borelis was in the exploration phase of her vocational development in May 2013, does not appear to have ever been regularly or steadily employed prior to her death, had a history of felony convictions, had been incarcerated on what appears to be more than one occasion and had issues with substance use/abuse, her employment capacity and earning capacity over the course of her work life cannot be specifically determined. Based on available information, it does not appear that Ms. Borelis was going to be a substantial wage earner. If she was going to be a wage earner over the long term, something was going to have to significantly change in the way she lived her life.

In regard to employment, taking her assumed 10th grade or less education into consideration, Ms. Borelis was qualified to work in jobs that are available to those with less than a high school education. These types of jobs are low skilled or trades oriented in nature which appears to be the type of job she held when and/or if she worked. However, considering her criminal history, apparent substance abuse history and lack of regular, steady employment, it cannot be said on a more probable than not basis when or if she would have become employed on any sort of a reasonably continuous basis or been a regular, substantial wage earner over time.

Owings Lewis has researched the impact criminal history can have on employability. The literature consistently documents the difficulty encountered by individuals with a criminal history in regard to gaining and maintaining employment. While there are jobs available to those with a criminal history, the availability of employment is less than what is available to those without a criminal history. There may also be employers who by policy may choose not to hire individuals with a criminal history or employers who are unable to hire those with a criminal history due to the population they serve. What impact her legal history would have had on Ms. Borelis' ability to obtain employment would have depended largely on the industry she chose to

pursue for work as there are jobs from which she would have been excluded. The exclusion from certain jobs and/or industries and the inability to be considered for jobs would therefore impact Ms. Borelis' employment capacity and earning capacity.

Had Ms. Borelis ultimately found employment and worked on a reasonably continuous, full time basis, according to State of Washington wage data, it is likely she could have earned approximately $25,000 - $40,000 in low skilled or trades oriented occupations. Based on her criminal history, low skilled or trades work would have been likely areas she may have achieved employment had she chosen to do so.

However, it appears that Ms. Borelis had not participated in education for several years with what appears to be little to no employment history. Additionally, her criminal record would likely have been an ongoing barrier to employment. It therefore cannot be said on a more probable than not basis when Ms. Borelis would have become employed or if employed, how much she would have worked or earned. It is important to note that the wages indicated above assume regular, full time employment. Whether or not Ms. Borelis would have been able to gain and maintain employment on a reasonably continuous, full time basis is in question due to her prior legal history and the way she went about her life.

It is also noted that Ms. Borelis appears to have had difficulties with substance abuse and been treated for depression. It is not the role of a rehabilitation counselor to diagnose medical or psychological conditions or determine the impact of those conditions on an individual's ability to function. Therefore, it is recommended that appropriate medical service providers be consulted as to Ms. Borelis' apparent substance abuse and depression difficulties and whether it would have impacted her ability to perform work related tasks.

Additionally, Owings Lewis performed research with regard to the effect of alcohol and drug abuse on an individual's employability. The literature indicates that alcohol and/or drug abuse/dependence have a substantial negative effect on employment. Issues that are raised include lower productivity/work performance, absenteeism, physical and mental health conditions due to the use/abuse, job loss, participation in criminal activities and potential convictions and incarcerations, etc. The literature also outlines high rates of death for those using and abusing drugs and alcohol.

## SUMMARY

It is difficult to predict what Ms. Borelis would have done for employment and if she worked, what she would have earned over time had she not died in May 2013. While she was a younger individual and was qualified to obtain low skilled and/or trades type positions based on her less than high school education, it does not appear that she had demonstrated the ability to be steadily employed. Ms. Borelis had a long history of substance abuse and a documented criminal history resulting in incarceration. Considering all these factors it cannot be said on a more probable than not basis that Ms. Borelis would have been a regular, full time wage earner over the long term.

Thank you for the opportunity to assist you in this matter. Please contact me with any questions.

Sincerely,

Shelley Lewis, MA, CRC, CLCP, ABVE/F
Certified Rehabilitation Counselor
Certified Life Care Planner
Board Certified Vocational Expert



1201 Pacific Avenue, Suite 600 • Tacoma, WA 98402 • Seattle (206) 248-3090 • Tacoma (253) 203-3298 • FAX (253) 203-3101

# SHELLEY LEWIS, MA, CRC, CLCP, ABVE/F

## EDUCATION

Western Washington University - Master of Arts - Rehabilitation Counseling
Graduated: 2001

University of Washington - Bachelor of Arts - Sociology
Graduated: 1992

Green River Community College - Associate of Arts - Liberal Arts
Graduated: 1990 with honors

## CERTIFICATIONS/REGISTRATIONS

Certified Rehabilitation Counselor, Commission on Rehabilitation Counselor Certification - #00051989 – Certified since April, 2002.

Certified Life Care Planner, Commission on Health Care Certification – #0944 – Certified since March 2007.

Board Certified Vocational Expert, American Board of Vocational Experts - #5352 – Certified since April 2012.

Registered Vocational Rehabilitation Counselor, Washington State Department of Labor &
Industries - #9100/148167 - Registered since January, 1996.

Vocational Expert, Social Security Administration, Office of Disability Adjudication and Review, #1152-14-0002.

Vocational Rehabilitation Counselor, United States Department of Labor, Office of Worker's Compensation Programs, #105447 – contract duration September 2010-October 2011


## EMPLOYMENT HISTORY

Owings Lewis, LLC, Tacoma, WA – January 2014 - Present – Owner/Rehabilitation Counselor/Life Care Planner
- Day to Day Business Operation
- Vocational Counseling
- Case Management
- Ability to Work Assessments
- Life Care Planning
- Expert Witness Testimony

Owings & Associates, Inc., Seattle, WA - June 1999 – December 2013 - Rehabilitation Counselor/Life Care Planner
- Vocational Counseling
- Case Management
- Ability to Work Assessments
- Life Care Planning
- Expert Witness Testimony

Whittall Management Group, Ltd., Mountlake Terrace, WA - Jan. 1996 - June 1999 - Vocational Rehabilitation Counselor
- Vocational Counseling
- Case Management
- Ability to Work Assessments
- Development, Implementation and Monitoring of Rehabilitation Plans
- Job Development and Placement

**EMPLOYMENT HISTORY con't.**

Group Health Cooperative - Legal Department, Seattle, WA - Jan. 1993-Dec. 1995 - <u>Legal Assistant</u>
- Litigation Support
- Employment Law, Administrative Law, Medicare and Small Claims Case Assistance
- Human Rights Commission/Equal Employment Opportunity Commission Complaint Response
- Witness Interview and Assessment

M.A. Hanna (Frmly Fiberchem, Inc.), Kent, WA - June 1986-Jan. 1993 - <u>Supplier Credit Coordinator</u>
- Rebate and Customer Service Report Submission
- Assistance to Chief Corporation Executives
- Assisted in Computerizing and Streamlining Supplier Credit Process

**OTHER RELATED EXPERIENCE**

Seattle Mental Health, Seattle, WA – Mentally Ill Offenders Program (MIO/DMIO CTP) –
Mar 2001-Dec 2001 – Practicum/Internship
- Vocational Rehabilitation Counselor
- Job Readiness/Preparedness Individual and Group Counselor

**PROFESSIONAL AFFILIATIONS**

Elected Board Member - Washington Chapter, International Association of Rehabilitation Professionals (IARP) – May, 2001 to May, 2007

Appointed Secretary/Treasurer – Washington Chapter, International Association of Rehabilitation Professionals (IARP) – July 2006 – May, 2007.

Member - International Association of Rehabilitation Professionals - (IARP - formerly National Association of Rehabilitation Professionals in the Private Sector, NARPPS) – Forensic Section and International Academy of Life Care Planners Section – 1999 to present

Member - Professionals in Worker's Compensation (PWC – formerly Women in Worker's Compensation, WWC) – Washington – 1998 to present

Member – National Rehabilitation Association (NRA) – 2004 to present

Member – American Board of Vocational Experts (ABVE) – 2005 to present

**PROFESSIONAL ACTIVITIES AND CONTINUING EDUCATION**

Delegate - People to People Ambassador Programs - Rehabilitation Counseling Delegation to the People's Republic of China – October, 2000

Brain Injury Association's 20th Annual Symposium: "Building Blocks of Change: Brain Injury Rehabilitation, Research, Prevention and Policy." – Atlanta, Georgia – July, 2001

The Third Annual Conference on Mentally Ill Offenders:  "*Collaborating for Success*" – Monroe Correctional Center, Monroe, Washington – October, 2001

Guest Lecturer – "Life Care Planning" – Western Washington University Master's Degree Program in Rehabilitation Counseling, AHE589 Case Management in Rehabilitation – Seattle, Washington – April 2002, June 2002 and July 2003.

2003 IARP Annual Conference:  *"A Meeting of the Minds"* – Baltimore, Maryland – April, 2003

Delegate – People to People Ambassador Programs - Rehabilitation Counseling Delegation to the Republic of Cuba – November, 2003

Spring 2004 Vocational Conference, Washington Department of Labor & Industries, IARP and IDEAS:  *"The Wide World of Vocational Rehabilitation"* – Seattle, Washington – June, 2004

Contemporary Forums – Brain Injuries – Special Session:  Traumatic Brain Injury Litigation – Seattle, Washington – May, 2005, endorsed by the Brain Injury Association of Washington

Speaker – "Evaluating Earning Capacity in Litigation" – Renton, Washington – October, 2005

Life Care Planning Certification Modules 1-8 – MediPro Seminars/University of Florida – July-December 2006

Contributing Author, "*A Rehabilitation Counselor's Practical and Historical Guide to Earning Capacity Assessment,*" a book published by Elliott & Fitzpatrick, Inc., September, 2007

2008 Spring Conference, ABVE:  "The Ethics of VE Testimony & Diminished Future Earning Capacity California Style" – San Diego, California – April, 2008

Contemporary Forums – Brain Injuries – A Multidisciplinary Approach to Maximizing Function – Seattle, Washington – May, 2008

Contributing Author, "*A Lawyer's Guide to Understanding Earning Capacity Assessment and Earning Capacity Options*," a book published by the American Bar Association, May, 2009

Foundation for Life Care Planning Research, "*2009 Building Foundations for Life Care Plan Development"* – Chicago, Illinois – September, 2009

University of Texas Pan-American Ethics Conference, *"Multicultural Ethical Issues in Rehabilitation"* – Tacoma, Washington – October, 2009

2009 Washington Chapter IARP Conference, *"The Art of Rehabilitation"* – Tacoma, Washington – October, 2009

OWCP Rehabilitation Counselor Certification Workshop – Seattle, Washington – September, 2010

Washington State IARP 2010 Annual Conference, *"Meeting of the Minds – Medical Aspects of Disability and Case Management"* – Tacoma, Washington – October, 2010

Speaker – "The Vocational Rehabilitation Process and Earning Capacity … Why We Do What We Do" – Law Offices of Kelley J. Sweeney, Seattle, Washington – October 2012

2012 IARP International Conference: *"Waves of Change: Oceans of Opportunity"* – San Juan, Puerto Rico – October, 2012

Speaker – "The Vocational Rehabilitation Process and Earning Capacity … Why We Do What We Do" – Scheer & Zehnder, Seattle, Washington – March 2012

2014 IARP WA Fall Conference, *"Rearranging the Familiar"* – Tacoma, Washington – October, 2014

IARP 2014 Annual Conference, *"Set a Course for Success"* – San Diego, California – November 2014

**OWINGS LEWIS**

1201 Pacific Avenue, Suite 600 • Tacoma, WA 98402 • Seattle (206) 248-3090 • Tacoma (253) 203-3298 • FAX (253) 203-3101

# FEE SCHEDULE as of January 2015

Shelley Lewis, rehabilitation counselor, professional rate is $215 per hour.

Cheri Streby, research librarian, professional rate is $200 per hour.

Shelley Lewis' deposition rate is $275 per hour, <u>2 hour minimum prepayment required</u>. If travel is required to/from deposition testimony, <u>1 hour minimum prepayment required at $215 per hour</u>. NON-REFUNDABLE.

Shelley Lewis' trial testimony rate is $275 per hour. Travel to/from trial location is $215 per hour.

**Shelley Lewis, MA, CRC, CLCP, ABVE/F**
*TESTIMONY LIST*

**Trials/Arbitrations**

| Case Name | Referral Source (P/D) | Date |
|---|---|---|
| Montgomery v. Liberty Northwest Insurance Company<br>    *-arbitration* | Max Nicolai (D) | 07/31/12 |
| Barnum v. State of Washington, et al.<br>        *-Superior Court of Washington for Pierce County* | Joseph Diaz (D) | 10/14/13 |
| Read/Turner v. State of Washington, et al.<br>        *-Superior Court of Washington for Snohomish County* | Suzanne LiaBraaten (D) | 11/05/14 |

**Depositions**

| Case Name | Referral Source (P/D) | Date |
|---|---|---|
| Sitzler v. Wong and Harrison Memorial Hospital<br>*-Superior Court of Washington for Kitsap County* | Heath Fox (D) | 11/15/04 |
| Ip v. City of Renton and State of Washington<br>*-Superior Court of Washington for King County* | Shannon Ragonesi (D) | 10/16/08 |
| Bachulis v. Group Health<br>*-Superior Court of Washington for King County* | D. Jeff Burnham (D) | 08/18/09 |
| Connolly v. Hyundai Motor America, et al.<br>*-Superior Court of Washington for Benton County* | Steve Minson (D) | 02/23/10 |
| Whitney v. Snohomish County PUD<br>*-Superior Court of Washington for Snohomish County* | Christopher Knapp (D) | 08/03/11 |
| Schisler v. Grays Harbor Community Hospital, et al.<br>*-Superior Court of Washington for Grays Harbor County* | Tracy Grant (D) | 09/28/11 |
| Girard v. State of Washington<br>*-Superior Court of Washington for Cowlitz County* | Edward Winskill (D) | 01/04/12 |
| Barnum v. State of Washington<br>*-Superior Court of Washington for Pierce County* | Joseph Diaz (D) | 05/30/13 |
| Son v. King County Metro, et al.<br>*-Superior Court of Washington for King County* | Linda Gallagher (D) | 06/10/13 |
| Sanchez v. Toppenish School District<br>*-Superior Court of Washington for Yakima County* | Robert Christie (D) | 08/30/13 |
| Moore v. Davids & USAA<br>*-Superior Court of Washington for King County* | Alan Peizer (D) | 09/23/14 |
| Wurts v. City of Lakewood<br>*-US District Court for Western District of WA at Tacoma* | Doug McDermott (P) | 01/16/15 |

**Washington State Board of Industrial Insurance Appeals Testimony**

| Case Name | Referral Source (P/D) | Date |
|---|---|---|
| Wendy Leighton | David Harpold (P) | 03/31/03 |
| Sheryl Erickson | Erin Dickinson (D) <br> Mary Wilson (D) | 06/17/03 |
| Nancy Ekdahl | David Harpold (P) | 05/22/13 |
| Shirley Lessard | Shirley Lessard (P) | 12/18/13 |
| Richard Frazee | Brian Wright (P) | 11/06/14 |