UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULE CROWELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COWLITZ COUNTY, et al., <br><br> Defendants <br><br> CONMED, INC., <br><br> Intervener/Third-Party Defendant. | CASE NO. C14-5153 BHS <br><br> CONSOLIDATED FOR PRETRIAL PURPOSES WITH <br><br> C14-5385BHS <br><br> C14-5672BHS <br><br> ORDER DENYING PLAINTIFFS' MOTIONS TO CONTINUE, GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND REMANDING/DISMISSING STATE LAW CLAIMS |

This matter comes before the Court on Intervenor and Third-Party Defendant Conmed, Inc. ("Conmed"), Defendants and Third-Party Plaintiffs Cowlitz County ("County") and Marin Fox Hight's ("Hight") motions for summary judgment on Borelis claims (Dkts. 107 & 109), Bush claims (Dkts. 120 & 122), and Deal claims (Dkts. 134 & 138); and Plaintiffs Jule Crowell, Kele Kuanoni, David Nelson, Lisa Sully and Kimberly

ORDER - 1

Bush's ("Plaintiffs") motions to continue Defendants' motions for summary judgment (Dkt. 130, 158). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On February 6, 2014, Plaintiffs Jule Crowell, individually and as personal representative of the estate of Stephanie Deal, decedent, and David Nelson, guardian ad litem for E.M. and J.A., minor children ("Deal Plaintiffs") filed a complaint against the County and Hight in Cowlitz County Superior court for the State of Washington. Dkt. 1. The Deal Plaintiffs assert a federal cause of action for civil rights violations and a state cause of action for negligence. *Id*.

On August 25, 2014, Plaintiffs Lisa Sully, as personal representative of the estate of Jenny Lynn Borelis ("Borelis"), deceased, and Kimberly Bush, as personal representative of the estate of Daniel D. Bush ("Bush"), deceased, filed a complaint in this Court against the County and Hight asserting federal civil rights violations and state law negligence. Cause No. 14-5672BHS, Dkt. 1.

On November 21, 2014, the Court granted Conmed's motion to intervene in these actions and consolidated the matters for pretrial issues. Dkt. 44.

On September 17, 2015, Conmed, the County, and Hight (collectively "Defendants") filed motions for summary judgment on Borelis's claims. Dkts. 107 & 109. On September 24, 2015, Defendants filed motions for summary judgment on Bush's claims. Dkts. 120 & 122. On September 30, 2015, Conmed filed a motion for summary judgment on Deal's claims. Dkt. 134. On October 1, 2015, the County and

Hight filed a motion for summary judgment on Deal's claims. Dkt. 138. On October 5, 2015, Borelis, Bush, and Deal filed a combined response. Dkt. 143. Defendants filed multiple replies. Dkts. 149, 150, 152, 160, 162, & 163.

On September 28, 2015, Plaintiffs filed a motion to continue the motions for summary judgment. Dkt. 130. On October 6, 2015, Conmed filed a response (Dkt. 147) in which the County and Hight joined (Dkt. 148). Plaintiffs did not reply.

On October 16, 2015, Plaintiffs filed a second motion to continue the summary judgment motions. Dkt. 158. On October 26, 2015, Conmed filed a response (Dkt. 165) in which the County and Hight joined (Dkt. 166).

## II. FACTUAL BACKGROUND

Although Defendants take issue with some of Plaintiffs' experts, they do not contest Plaintiffs' recitation of the facts regarding the individual injuries. Thus, the Court recites the facts as set forth in Plaintiffs' combined response.[1]

**A.   Jenny Borelis**

On May 12, 2013, Borelis was booked into the Cowlitz County jail on a misdemeanor warrant. Prior to her booking, she was seen at the St. John Medical Center for a closed head injury and multiple abrasions to her face that she received at the time of her arrest. The discharge instructions indicated that she should be returned to the emergency department immediately if she had "severe headache, nausea, vomiting,

---

[1] Defendants argue that addressing all the claims at the same time is confusing and prejudicial. *See*, *e.g.*, Dkt. 152 at 2-3. Despite Defendants' concerns, the Court is not confused and Defendants are not prejudiced by combined consideration of the issues. Therefore, the Court denies their motions to strike and/or proceed on an individual basis.

weakness, numbness, vision or hearing changes, decreased alertness or increased confusion."

Upon arriving at the Cowlitz County Jail, Borelis informed the booking officer that she had hit her head on the ground during the arrest and that she would be detoxing from heroin. As a result of her medical status and health history, she underwent a neurological examination and was placed under a detox protocol. According to the physician's orders, Borelis was to receive continuous care, including observations of her fluid intake, multivitamins and other medications, a vital signs assessment every 8 hours, and staff was ordered to observe her for insomnia, nightmares, hallucinations, anxiety, psychosis, paranoia, and muscle spasms, among other symptoms of heroin detoxification. While it is unclear whether staff dispensed the medications, the record does reflect that staff conducted a vital signs assessment approximately every 8 hours. Dkt. 108-1 at 81 (Borelis refused the first assessment).

On May 15, 2013, jail staff called medical staff to Borelis's cell because she had fallen off her bunk. Medical staff found Borelis lying on the floor, and she complained to them that she was in pain. According to the nurse's notes, Borelis had a temperature of 102.1 degrees, was in a stupor, had jumbled speech, and had vomited. The nurse verified that Borelis was on a detox protocol and noted that she would consult the provider for review. *Id*. Borelis's condition deteriorated. At 2:30 pm, the nurse contacted a physician who ordered a urinary analysis for a possible urinary tract infection and prescribed Tylenol for Borelis's fever. *Id*. At 2:55 pm, the jail staff called the nurse to Borelis's cell. The nurse found Borelis non-responsive and could not detect a pulse.

1  Staff called 911, and Borelis was transported to the hospital.  Borelis never recovered,
2  and she died the next day.

3  **B.    Stephanie Deal**

4        On August 3, 2013, Deal was booked into Cowlitz County Jail.  The next day,
5  Deal submitted a sick request claiming that she was detoxing from heroin and
6  methamphetamine.  Dkt. 139 at 17.  A doctor then prescribed a detox protocol, which
7  was similar to Borelis's protocol.  *Id*. at 18.

8        Beginning on August 6, 2013, Deal exhibited symptoms of withdrawal.  She was
9  found unresponsive on multiple occasions and was having stomach problems.  Dkt. 22-2
10 at 25-26.  On August 7, 2015, Dr. Gorecki attended to Deal.  The doctor noted acute
11 herion withdrawal and gave directions to continue the detox protocol.  *Id*.  Early in the
12 morning of August 10, 2013, the nurse checked on Deal, and Deal was slurring her
13 words, the nurse had difficulty obtaining a pulse, and Deal's mental status had
14 significantly changed.  The nurse asked the jail staff to call the ambulance, and the
15 ambulance arrived shortly thereafter.  Deal was awake when the EMTs arrived, was able
16 to move without assistance, and answer questions with slurred speech.  Deal was
17 transferred to a gurney, and resisted efforts by the EMTs to give her an IV.  Deal vomited
18 face up, but the EMTs did not have a portable suction unit available and had to retrieve it
19 from their vehicle.  Deal suffered a cardiac arrest and lost consciousness.  The EMTs
20 began giving Deal chest compressions, ventilating her with oxygen, and began driving
21 her to the hospital.  *Id*. at 39-55.  Deal was pronounced dead shortly after arriving at the
22 hospital.

**C.    Daniel Bush**

On January 13, 2014, Bush was booked into the Cowlitz County Jail.  Upon being booked, Bush informed the booking officer that he was suffering from back pain and indicated that he was being prescribed medications for nausea, anxiety and back pain.  On the second day of his incarceration, Bush complained to medical staff of chronic back pain and requested ibuprofen; he also expressed concern about getting his regular prescriptions while he was incarcerated, which his family had dropped off for him.  Nursing staff asked Dr. Gorecki, the jail's physician, whether Mr. Bush could have his medications dispensed to him; this request was denied.  Dkt. 121-1 at 29.

On January 15, 2014, Bush complained to medical staff of shortness of breath, achy bones and a sharp pain in his ribs.  During this visit he was also unable to move or lift his arms without giving the appearance of extreme pain, then fell to the floor, stating that he could not move.  Eventually, Bush was able to get up off the floor and walk back to his unit without assistance.  *Id*. at 30.

On January 16, 2014, Bush, upon his request, was seen by a mental health clinician.  He reported that he had a chest injury, depression, anxiety, and that he missed his family.  The clinician determined that these complaints were the result of manipulative behaviors and noted that he was "okay."  Later that day, jail staff placed Bush in a restraint chair in his cell in response to a threat of self-harm.  When medical staff arrived, they found him unresponsive with blood on his face.  After he responded to the smell of ammonia, he immediately passed out again, before responding a second time to ammonia.  There is no indication that further medical attention was ordered in

response to this episode. That day, however, the jail received Bush's medical records, which indicated an addiction to herion. Bush was placed on a detox protocol.

On January 18, 2014, Bush complained to medical staff that he had chest pain and difficulty breathing when sitting up, and that his left breast felt like "pins and needles." Later that night, he complained of severe back pain, stated that he had been coughing up blood and his lungs hurt, and he was sweating profusely.

Early the next morning, jail staff found Bush screaming in his cell because he had severe pain in his back and while inhaling. The clinician noted that Mr. Bush had blood in the back of his throat and "continue[d] to monitor" Bush. Dkt. 121-1 at 32-33. During another assessment later that day, the clinician noticed that Bush had diminished sound in his lower lobes, but that his blood pressure and blood oxygenation were normal.

At 5:22 am on the morning of January 20, 2015, jail staff found Bush in his cell and unresponsive. The staff called for medical attention and started to perform CPR. Resuscitation was unsuccessful, and Bush was declared dead at the scene. The medical examiner found that Bush suffered from bilateral pneumonia and a staph infections, which likely had become septic.

### III. DISCUSSION

**A.  Motions to Continue**

Plaintiffs move to continue Defendants' motions because they are premature and should be renoted for a date after the close of discovery. Dkts. 130 & 158. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer considering the motion . . . ."

Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

In this case, Plaintiffs concede that a continuance is not necessary. For example, Plaintiffs assert that, "[a]lthough the evidence before the Court is already more than sufficient to warrant denial of the summary judgment motions, Plaintiffs must still be permitted to complete the depositions of these additional witnesses." Dkt. 130 at 3. A Rule 56(d) continuance is proper when a party does not possess facts essential to justify his opposition. Plaintiffs concede they have sufficient facts to justify their opposition, and, therefore, the Court need not grant a Rule 56(d) continuance. Plaintiffs' motion are denied.

**B.      Summary Judgment**

Defendants move for summary judgment on the remaining federal and state law claims.

**1.      Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## 2.     42 U.S.C. § 1983

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under section 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

In this case, Plaintiffs' Eighth Amendment rights are at issue. "The Eighth Amendment's proscription against cruel and unusual treatment is violated when officials remain deliberately indifferent to the serious medical needs of convicted prisoners." *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "[D]eliberate indifference entails something more than mere negligence, [and] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "The inmates must demonstrate that they were confined under conditions posing a risk of 'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)). "Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement*, 298 F.3d at 904.

In this case, Plaintiffs' federal claims fail because they fail to identify or assert claims against individuals. Section 1983 claims require proof of acts committed by persons acting under color of state law. Moreover, Eight Amendment claims require proof of specific mental states. Plaintiffs assert unlawful acts on behalf of generic jail staff or medical staff and fail to identify or allege acts on behalf of any specific individual. In other words, Plaintiffs attempt to articulate group liability instead of submitting evidence to show that a particular person acted with deliberate indifference to a named plaintiff. In the absence of such evidence or arguments, Plaintiffs fail to meet their burden in opposition to summary judgment.

Even if Plaintiffs named and identified specific individuals, the Court concludes that Plaintiffs have failed to show deliberate indifference. At most, Plaintiffs have shown either misdiagnosis or failures to timely identify medical need. Plaintiffs have failed to submit evidence of a culpable state of mind in denying medical needs. For example, Plaintiffs assert that Bush was "labeled a 'faker' and subsequently ignored." Dkt. 143 at 12. While there is evidence to support the assertion that Bush exaggerated his symptoms to manipulate staff, there is no evidence to support the assertion that he was ignored. Even though Bush refused the final detox assessment, staff checked on him every half hour until they discovered him unresponsive. In light of this and other evidence, Plaintiffs have failed to show a deliberate indifference to a serious medical need. Therefore, the Court grants Defendants' motions as to all federal individual liability claims.

1   With respect to entity liability, if "there is no constitutional violation, there can be
2   no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th
3   Cir. 2008). While there are a few instances where an entity may be liable in the absence
4   of individual liability, Plaintiffs fail to identify how any of those exceptions apply to this
5   case. Plaintiffs simply argue that because the injured were on the same detox protocol or
6   in the same jail seen by the same medical staff, then the County and/or Conmed must be
7   liable. This is not the law and, therefore, Plaintiffs' federal claims against all Defendants
8   fail. The Court grants Defendants' motions on all federal claims.

**C.   Supplemental Jurisdiction**

The Court may decline to exercise supplemental jurisdiction over pendant state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. While the Court recognizes the parties' concerns with being close to trial and then being either remanded or dismissed, the issues of negligence under state law are best addressed by the state courts. Absent constitutional violations, the federal court need not interfere with the operations of local jails under state laws. These issues are best addressed in the local courts. Moreover, Plaintiffs will have additional time to complete the discovery that they claim still needs to be completed.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Plaintiffs' motions to continue Defendants' motions for summary judgment (Dkt. 130, 158) are **DENIED**; Defendants'

1 motions for summary judgment on Borelis's claims (Dkts. 107 & 109), Bush's claims
2 (Dkts. 120 & 122), and Deal's claims (Dkts. 134 & 138) are **GRANTED in part** on the
3 federal claims; the Deal complaint is remanded to Cowlitz County Superior Court; and
4 the Borelis and Bush complaint is dismissed.
5    Dated this 8th day of December, 2015.

BENJAMIN H. SETTLE
United States District Judge